| | |
|---|---|
| **DENVER COUNTY DISTRICT COURT** <br><br> **2nd JUDICIAL DISTRICT, STATE OF COLORADO** <br> **1437 Bannock Street, Room 256, Denver, CO 80202** | DATE FILED: June 10, 2015 6:48 PM |
| AIDAN MONTALVO, an individual, <br><br>    Plaintiff, <br><br> v. <br><br> NEW YORK LIFE INSURANCE AND ANNUITY CORPORATION d/b/a NEW YORK LIFE INSURANCE COMPANY, a Delaware Corporation, <br><br>    Defendant. | |
| | ▲   **FOR COURT USE ONLY**   ▲ <br> ──────────────────── |
| R. Bret Beattie, #39805 <br> Alexandra Lengen, #47910 <br> The Bret Beattie Law Firm, LLC <br> 7200 S. Alton Way, Suite A-120 <br> Centennial, CO 80112 <br> P: 720-708-3275 <br> F: 720-708-3268 <br> Email: bret@bretbeattielawfirm.com; <br> alengen@bretbeattielawfirm.com <br><br> ATTORNEYS FOR THE PLAINTIFF | CASE NO.: <br><br> DIVISION NO.: |
| **COMPLAINT AND JURY DEMAND** ||

The Plaintiff, Aidan Montalvo, by and through his attorneys of record hereby brings this Complaint against Defendant New York Life Insurance and Annuity Corporation, d/b/a New York Life Insurance Company. Plaintiff states as follows:



EXHIBIT
**A**

## PARTIES, JURISDICTION, AND VENUE

1. Plaintiff, Aidan Montalvo, is a resident of Weld County, State of Colorado.

2. Defendant, New York Life Insurance and Annuity Corporation, d/b/a New York Life Insurance

   Company, is a corporation organized under the laws of the State of Delaware, currently doing

   business throughout the State of Colorado, with offices in Denver County, State of Colorado.

3. As such, this Court has jurisdiction and venue is proper in Denver County, State of Colorado.

## FACTS COMMON TO ALL CLAIMS

4. On or about August 10, 2012, Ricard Montalvo Jr. (hereinafter, "the insured"), executed and

   delivered a multi-page Life Insurance Application to Defendant New York Life's designated

   representative in order to procure a "Standard Risk" life insurance policy. *See, Life Insurance*

   *Application,* attached as Exhibit A hereto.

5. The Policy was issued by Defendant in the face amount of $75,000.00 and named the insured's

   minor son, Plaintiff Aidan Montalvo, as the sole beneficiary of the policy. *See, Life Insurance*

   *Policy,* attached as Exhibit B hereto.

6. The insured continuously paid his premiums, and the policy remained in full force and effect at

   the time of his untimely death in a motor vehicle accident that occurred don January 26, 2013.

7. After receiving notice of its insureds untimely accidental death, rather than pay the benefits due

   and owing under the policy, Defendant instead launched an investigation into its insured's

   health history claiming it had a right to do so because the insured's accidental death occurred

   within two years of the issuance of the life insurance policy, in a time frame referred to by De-

   fendant as the "contestability period."

8.After this investigation, Defendant notified Plaintiff by certified letter that rather than paying

his claim for benefits, Defendant was rescinding the policy based upon its insured's alleged ma-

terial misrepresentation in his response to question 13(c) as to whether or not in the prior two

years he "had, or had been treated for, kidney, intestinal, blood, circulatory or chronic respirato-

ry disorder, liver or pancreas disorder, seizures or other nervous system disorder…"

9.However, in a letter bearing the same date, the deceased insured's formerly treating urologist

attested to the accuracy and truthfulness of his patient's answer to that question. *See, Letter from*

*Dr. Kevin K. Nasseri, M.D.,* attached as Exhibit C hereto.

10.Despite receiving the letter from its insured's treating physician, Defendant continued to

refuse to pay any of the life insurance benefits owed to the Plaintiff as the beneficiary of the

policy for over a year.

11.Defendant continued to refuse to pay any benefits until Plaintiff retained an attorney in this

matter, who was able to secure a legal department review of Defendant's denial.

12.After this subsequent review, in February 2015, Defendant finally tendered policy limits owed

to Plaintiff with interest accruing from the date of the submission of the claim.

### FIRST CLAIM FOR RELIEF
### Statutory Relief for Violation of C.R.S. 10-3-1115/1116

13.Plaintiff incorporates paragraphs 1-12 as if realleged.

14.Defendant, its agents, employees, and adjusters unreasonably delayed the payment of life in-

surance benefits due to the Plaintiff under the policy of insurance procured and paid for by the

Plaintiff's father, in violation of C.R.S. section 10-3-1115 and 1116.

15. As a result of this unlawful delay, Defendant is liable to Plaintiff for relief allowed under the statute, including an award of statutory penalties, attorneys fees, and costs.

## SECOND CLAIM FOR RELIEF
### Bad Faith Breach of Insurance Contract

16. Plaintiff incorporates paragraphs 1-15 as if realleged.

17. At all relevant times, Defendants owed a duty of good faith and fair dealing to its insured and his beneficiaries under the insurance contract.

18. Defendant breached its duty of good faith and fair dealing to Plaintiff by engaging in one or more of the following:

   a.   Failing to give equal consideration to the interests of Plaintiff, its insured;

   b.   Seeking to discover only evidence that defeated its insured's (Plaintiff's) claims;

   c.   Refusing to pay claims without conducting a reasonable investigation based upon all available information;

   d.   Not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability had become reasonably clear;

19. Defendant's conduct was manifestly unreasonable and either knew or recklessly disregarded the fact that this conduct was manifestly unreasonable.

20. Defendant's breaches are the direct and proximate cause of Plaintiff's damages, and as such, Defendants are liable to Plaintiff for the financial and emotional harm caused to the Plaintiff, economic and non-economic damages, according to proof.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment against Defendant,

New York Life, as to all claims for relief set forth above, and to award all statutory penalties, attorney's fees, double damages, interest, costs and such other relief as the Court may deem just and proper.

**PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL ISSUES SO TRIABLE.**

Dated this 10th day of June, 2015.

THE BRET BEATTIE LAW FIRM, LLC

By  */s R. Bret Beattie*
R. Bret Beattie, Atty. Reg. No. 39805
Alexandra M. Lengen, Atty. Reg. No. 47910
The Bret Beattie Law Firm, LLC
7200 S. Alton Way, Ste. A-120
Centennial, CO 80112
(720) 708-3275

Attorneys for the Plaintiff

Plaintiffs' Addresses:
131 South 4th Street
LaSalle, CO 80645

DATE FILED: June 10, 2015 6:48 PM



**LIFE INSURANCE POLICY**

**RICARDO MONTALVO JR**

**39 920 541**

INSURED -  RICARDO MONTALVO JR
POLICY NUMBER -  39 920 541
POLICY DATE -  OCTOBER 15, 2012

# New York Life Insurance Company (A Mutual Company founded in 1845)

51 Madison Avenue, New York, New York 10010  1-800-695-4331 http://www.newyorklife.com

**New York Life Insurance Company** will pay the benefits of this policy in accordance with its provisions.  The pages that follow are also a part of this policy.

**Right To Examine Policy** Please examine your policy.  Within 10 days after delivery, you can return it to New York Life Insurance Company or to the agent through whom it was purchased, with a written request for a refund of premium.  Upon such a request, the policy will be void from the start, and a full premium refund will be made.

**Premiums** While this policy is in force and the Insured is living, premiums can be paid at any time before the Policy Anniversary on which the Insured is age 121.The premiums payable for this policy are shown in the Premium Schedule on the Policy Data pages.  They are payable in accordance with the Premiums section.

**Effective Date** The Effective Date is the date the policy is delivered and the first premium is paid.  Coverage does not begin until the Effective Date unless temporary coverage is obtained under a separate temporary coverage agreement.

This policy is executed as of the Date of Issue shown on the Policy Data pages.

**PLEASE READ THIS POLICY CAREFULLY FOR FULL DETAILS.**

President

Secretary

**Employee's Whole Life Insurance Policy.**

Life Insurance Proceeds Payable At Insured's Death.
Premium Payments Payable During Insured's Lifetime,
Until Date Shown On The Policy Data Pages.
No Premium Payments Payable On Or After Age 121.

This Policy Is Eligible For Dividends.

ICC11211-52

## POLICY INFORMATION

INSURED -- RICARDO MONTALVO JR                      AGE 47

POLICY NUMBER -- 39 920 541                      CLASS OF RISK - STANDARD


POLICY DATE -- OCTOBER 15, 2012                  DATE OF ISSUE -- AUGUST 27, 2012


OWNER     INSURED


PLAN      EMPLOYEE'S WHOLE LIFE WITH
          DISABILITY WAIVER OF PREMIUM (WP) AND
          OPTION TO PURCHASE PAID-UP ADDITIONS (OPP)



AMOUNT    FACE AMOUNT                                        $75,000.00



BENEFICIARY
(subject to change)   FIRST - AIDEN X MONTALVO - SON - 100%







STATE INSURANCE DEPARTMENT PHONE NUMBER  303-894-7499

SEE CONTINUATION OF PAGE 2

**POLICY NUMBER : 39 920 541**                              **INSURED :   RICARDO MONTALVO JR**

## ADDITIONAL POLICY INFORMATION

THE INTEREST RATE REFERRED TO IN SECTIONS 4.4 AND 7.14 IS 4% PER YEAR


THE MORTALITY TABLES REFERRED TO IN SECTION 7.14 ARE THE COMMISSIONER'S 2001 STANDARD ORDINARY UNISEX (80) COMPOSITE ULTIMATE TABLE OF MORTALITY, ANB.

POLICY NUMBER : 39 920 541                    INSURED :  RICARDO MONTALVO JR

PREMIUM SCHEDULE

PREMIUMS PAYABLE AT MONTHLY    INTERVALS, AS FOLLOWS
    (TOTAL PREMIUM includes the following amounts for any supplementary benefits)

```
BEGINNING AS OF      TOTAL
MO. DAY YEAR         PREMIUM ##
10-15-2012           $189.75
10-15-2030           $180.00
```

```
PAYABLE ON SAME DATE EACH YEAR UNTIL
10-15-2086                      FINAL PREMIUM PAYMENT
```

**RIDER PREMIUMS**

ADDITIONAL AMOUNTS SHOWN BELOW MUST BE ADDED TO THE BASE POLICY PREMIUM SHOWN ABOVE TO DETERMINE
THE TOTAL PREMIUM AMOUNT TO BE PAID. ADDITIONAL AMOUNTS FOR RIDERS ARE NO LONGER PAYABLE AFTER RIDER
ENDS. SEE RIDER FORM FOR DETAILS.

```
                     WP
10-15-2012           $9.75
```

THE EXPENSE CHARGE APPLIED TO ALL PAYMENTS MADE UNDER THE OPTION TO PURCHASE
PAID-UP ADDITIONS(OPP) RIDER WILL NOT EXCEED 5%.

THE WAIVER OF PREMIUM CHARGE APPLIED TO ALL SCHEDULED OPP PAYMENTS UNDER THE OPTION
TO PURCHASE PAID-UP ADDITIONS(OPP) RIDER IS 2.25%.

FOR THE OPP RIDER, THE ANNUAL PREMIUM AMOUNT, WHICH IS BASED ON A STANDARD
CLASS OF RISK AND REFERRED TO IN THE OPTION TO PURCHASE PAID-UP ADDITIONS RIDER
AS THE OPP PAYMENT LIMIT IS $   2,043.25.

## THE TOTAL PREMIUM MUST BE PAID TO KEEP THIS POLICY INFORCE.  IT INCLUDES THE
APPLICABLE POLICY FEE AND ANY ADDITIONAL AMOUNT FOR RIDERS OR OTHER BENEFITS REQUIRED
TO BE PAID FOR THE FIRST YEAR.   THE TOTAL PREMIUM FOR ALL MODES AVAILABLE, IS AS FOLLOWS:

| ANNUAL | SEMIANNUAL | QUARTERLY | MONTHLY | C-O-M | |
|--------|-----------|-----------|---------|-------|---|
| $2,151.25 | $1,120.00 | $572.50 | $196.75 | $189.75 | (PREMIUMS PAYABLE PER MODAL PERIOD) |
| $2,151.25 | $2,240.00 | $2,290.00 | $2,361.00 | $2,277.00 | (TOTAL PREMIUMS PAYABLE PER YEAR) |

THE PREMIUMS SHOWN ON THESE DATA PAGES INCLUDE THE FOLLOWING POLICY FEES-
ANNUAL- $40.00, SEMI-ANNUAL- $22.00, QUARTERLY- $13.00, MONTHLY- $7.00,
C-O-M-  $3.75, PER MODAL PREMIUM.

PAYMENT BY A MODE OTHER THAN ANNUAL WILL RESULT IN A HIGHER TOTAL PREMIUM
BEING PAID EACH YEAR.

POLICY NUMBER : 39 920 541                    INSURED :  RICARDO MONTALVO JR

## TABLE OF GUARANTEED VALUES*

| END OF POLICY YEAR | CASH VALUE | OPTIONS UPON TERMINATION OF POLICY | | | END OF POLICY YEAR |
|---|---|---|---|---|---|
| | | PAID-UP INSURANCE OR EXTENDED INSURANCE | | | |
| | | | YEARS | DAYS | |
| 1 | $205.50 | $675 | 0 | 323 | 1 |
| 2 | 205.50 | 675 | 0 | 303 | 2 |
| 3 | 1,176.00 | 3,450 | 4 | 36 | 3 |
| 4 | 2,439.00 | 6,975 | 7 | 6 | 4 |
| 5 | 3,734.25 | 10,275 | 9 | 72 | 5 |
| 6 | 5,112.00 | 13,650 | 10 | 338 | 6 |
| 7 | 6,516.00 | 16,800 | 12 | 81 | 7 |
| 8 | 7,943.25 | 19,875 | 13 | 97 | 8 |
| 9 | 9,390.00 | 22,800 | 14 | 47 | 9 |
| 10 | 10,855.50 | 25,500 | 14 | 304 | 10 |
| 11 | 12,340.50 | 28,200 | 15 | 136 | 11 |
| 12 | 13,854.00 | 30,750 | 15 | 287 | 12 |
| 13 | 15,393.75 | 33,150 | 16 | 34 | 13 |
| 14 | 16,956.00 | 35,475 | 16 | 115 | 14 |
| 15 | 18,534.75 | 37,725 | 16 | 166 | 15 |
| 16 | 20,121.75 | 39,825 | 16 | 190 | 16 |
| 17 | 21,714.75 | 41,850 | 16 | 191 | 17 |
| 18 | 23,313.00 | 43,800 | 16 | 171 | 18 |
| 19 | 24,918.75 | 45,600 | 16 | 133 | 19 |
| 20 | 26,534.25 | 47,325 | 16 | 81 | 20 |
| AGE 60 | 15,393.75 | 33,150 | 16 | 34 | AGE 60 |
| AGE 65 | 23,313.00 | 43,800 | 16 | 171 | AGE 65 |

*This table assumes premiums due have been paid to the end of the Policy Year shown. These values do not include any dividend accumulations, cash value of paid-up additional insurance, or policy loans.

Values for the end of Policy Year not shown will be provided on request.

Dividends are not guaranteed to be paid.

NEW YORK LIFE INSURANCE COMPANY
POLICY DATA PAGE 2A
1152EWL.IC-2A

**WE & YOU**
In this policy, the words "we",
"our" or "us" refer to New York
Life Insurance Company,
and the words "you" or "your"
refer to the Owner of
this policy.

When you write to us,
please include the policy
number, the insured's full
name, and your current
address.

# CONTENTS

| SECTION | PROVISIONS | PAGE |
|---------|------------|------|
|  | POLICY DATA PAGES | 2 |
| ONE | LIFE INSURANCE PROCEEDS | 4 |
| TWO | OWNER AND BENEFICIARY | 4 |
| THREE | PREMIUMS | 5 |
| FOUR | CASH VALUE AND POLICY LOANS | 7 |
| FIVE | DIVIDENDS | 9 |
| SIX | PAYMENT OF POLICY PROCEEDS | 10 |
| SEVEN | GENERAL PROVISIONS | 10 |

APPLICATION - Attached to the Policy

RIDERS OR ENDORSEMENTS
(IF ANY) - Attached to the Policy

**Note:** This policy is a legal contract between the policyowner and the Company.

1152.IC-3

# SECTION ONE - LIFE INSURANCE PROCEEDS

1.1 **Life Insurance Proceeds** The proceeds payable under this policy include the face amount of this policy and the following:
- Any other benefits from riders or dividends payable because of the Insured's death, plus
- Any part of a premium paid for the period after the policy month in which the Insured dies, less
- The premium for one policy month if the Insured dies during a grace period,
- Less any outstanding policy loan and accrued policy loan interest.

We will pay the life insurance proceeds to the beneficiary promptly when we have proof that the Insured died on or after the Effective Date of this policy, subject to all of this policy's provisions. We will pay the life insurance proceeds in one sum. These proceeds bear interest compounded each year from the Insured's death to the date of payment. We set the interest rate each year. This rate will not be less than the rate required by law.

A claim for the life insurance proceeds must be made in writing to one of our Service Offices or any other location that we indicate to you in writing.

# SECTION TWO - OWNER AND BENEFICIARY

2.1 **Owner** The owner of this policy is shown on the Policy Data page. In this policy, the words "you" and "your" refer to the owner.

2.2 **Successor Owner** A successor owner can be named in the application, or in a form we provide. The form and any other required documents must be completed and signed by you. If you die before the successor owner, the successor owner will become the new owner. If no successor owner survives you and you die before the Insured, your estate becomes the new owner.

2.3 **Change Of Ownership** You can change the owner or successor owner of this policy in a form we provide. The form and any other required documents must be completed and signed by you. This change will take effect as of the date you signed the form, subject to any payment we made or action we took before receiving the change. When this change takes effect, all rights of ownership will pass to the new owner. Changing the owner or successor owner cancels any prior choice of owner or successor owner, but does not change the beneficiary.

2.4 **Beneficiary** The beneficiary for any life insurance proceeds is the person or entity named in the application, or in a notice you sign that gives us the information we need. If more than one beneficiary is named, they can be classed as first, second, and so on. If two or more are named in a class, their share in the proceeds is equal, unless you state otherwise. The stated shares will be paid to any first beneficiaries who survive the Insured. If no first beneficiaries survive, payment will be made to any beneficiary surviving in the second class, and so on.

If no beneficiary, for either all or part of the proceeds, survives the Insured, the right to those proceeds will pass to you. If you are deceased, this right will pass to your estate.

2.5 **Change Of A Beneficiary** While the Insured is living, you can change a beneficiary by notifying us in writing. The notice must be signed by you and include the policy number, the name of the Insured, with the beneficiary designation clearly stated. This change will take effect as of the date you signed the notice, subject to any payment we made or action we took before receiving the change. For example, if we make any payment before we record the change, we will not have to make the payment again.

1152.IC-4

## SECTION TWO - OWNER AND BENEFICIARY (Continued)

2.6   **Simultaneous Death Of Insured And Beneficiary** Unless stated otherwise in the policy or in your signed notice that is in effect at the Insured's death, if any beneficiary dies at the same time as the Insured or within 15 days after the Insured but before we receive proof of the Insured's death, we will pay the proceeds as though that beneficiary died first.

## SECTION THREE - PREMIUMS

3.1   **Premium Payments** Each premium for this policy is payable in United States currency, while the Insured is living, on or before its due date, as shown in the Premium Schedule on the Policy Data pages. Premiums are payable at our Home Office or at one of our Service Offices. The first premium may also be paid to any one of our authorized agents in exchange for a receipt signed by the President or Secretary of the Company and duly countersigned by you.

Premiums can be paid at monthly modes by preauthorized bank arrangement, or every 3 months, 6 months, once each year, or by any other mode we make available. The premium rate for each of these modes is determined using the method in effect as of this policy date. You can change the premium mode by notifying us in writing at one of our Service Offices and by paying the correct premium for the new mode.

3.2   **Grace Period** We allow 31 days from the due date for payment of a premium. This is called a grace period. All insurance coverage continues during this grace period.

If a premium is not postmarked by the end of this grace period, this policy will lapse. All insurance will end if the policy has no cash value and no dividend values. If the policy has cash value or dividend values, insurance can be continued only as stated in Section 3.3 (Options 1 or 2), but any insurance or benefits from riders or dividends will end at the time of lapse. If the Insured dies during a grace period, we will reduce the life insurance proceeds by an amount equal to the premium for one policy month.

3.3   **Options Upon Lapse** If premium payments are discontinued, you may elect one of the following three options. Unless you elect a different option within 60 days after the due date of the premium in default the policy will continue under Option 1 Extended Insurance. If the policy has cash values or dividend values, insurance can be continued only if you elect Options 1 or 2.

**1. Extended Insurance** If the policy has cash value or dividend values at the time of lapse, it will continue as extended insurance. Extended insurance is level term insurance for which no more premiums are due. It is payable to the beneficiary when we have proof that the Insured died after the end of the grace period and before the end of the term period. The amount of extended insurance will equal the Face Amount of this policy, plus the amount of any paid-up additions and dividend accumulations, less any outstanding policy loan and accrued policy loan interest. No insurance or benefits from riders or dividends will be provided after the end of the grace period.

We calculate the term period as of the due date of the overdue premium. We do this by applying the sum of the cash value and dividend values, less any outstanding policy loan and accrued policy loan interest, at the net single premium rate for term insurance for the Insured's age on that date. The term period is measured from that due date.

1152.IC-5

## SECTION THREE – PREMIUMS (Continued)

The amount of extended insurance might be less than or equal to the amount of paid-up insurance available, or the Table of Guaranteed Values on the Policy Data page might show that extended insurance is not available. In these cases, the policy will continue under the paid-up insurance option instead.

**2. Paid-up Insurance** Instead of extended insurance, paid-up life insurance can be elected. Paid-up insurance begins as of the date we record your notice electing it, or at the end of the grace period if later. No more premiums are due for this insurance. It is payable to the beneficiary when we have proof that the Insured died while this paid-up insurance option was in effect.

We calculate the amount of paid-up insurance as of the due date of the overdue premium. We do this by applying the sum of the cash value and dividend values, less any outstanding policy loan and accrued policy loan interest, at the net single premium rate for the Insured's age on that date. In most cases, this amount will be less than the face amount of this policy. No insurance or benefits from riders will be provided after this paid-up insurance option goes into effect.

This insurance can be surrendered at any time. It has cash value and policy loan value, and is eligible for dividends. This insurance will end when you send us your signed request for the Cash Surrender Value. If surrender is requested within 30 days after a policy anniversary, the cash value will be no less than the cash value as of such policy anniversary.

**3. Surrender for Cash** Instead of extended insurance or paid-up insurance, you can surrender this policy for its cash value and dividend values, less any outstanding policy loan and accrued policy loan interest, as stated in the Cash Value provision. All insurance will end when you send us your signed request for the cash value proceeds.

3.4 **Reinstatement** Within 5 years after this policy has ended, you can apply, in writing, to reinstate the policy (and any other benefits provided by riders) if you did not surrender it. If the required payment is made within 31 days after the end of the grace period, no proof of insurability is required, but the Insured must be living when we receive the required payment. If not, when you apply for reinstatement, you must provide proof of insurability that is acceptable to us.

To reinstate this policy, all overdue premiums must be paid, with interest at 6% per year from each of their due dates. If we declare a policy loan interest rate of less than 6%, the interest rate for all overdue premiums at the time of reinstatement will be the same as the policy loan interest rate. Any outstanding policy loan and accrued policy loan interest, and any policy loan deducted when we determined the extended or paid-up insurance, must also be repaid. Interest on the policy loan will be compounded once each year and will be based on the policy loan interest rate or rates that were in effect since the time of lapse. All or part of these payments can be charged as a new outstanding policy loan if there is enough policy loan value.

3.5 **Premium Adjustment at Death** We will increase the life insurance proceeds by any part of a premium paid for the period after the policy month in which the Insured dies.

1152.IC-6

# SECTION FOUR – CASH VALUE AND POLICY LOANS

4.1 **Cash Value** Cash values for this policy at the end of selected policy years are as shown in the Table of Guaranteed Values on the Policy Data pages, if premiums have been paid as called for in the Premiums section. These values do not include dividend values and paid-up additions, and they do not reflect any outstanding policy loan. Cash values at other times depend on the date to which premiums have been paid, and on how much time has passed since the last policy anniversary. When you ask us, we will tell you how much cash value there is.

The cash value on the due date of an unpaid premium will not decrease during the 3 months after that date. Also, the cash value of any paid-up insurance on a policy anniversary will not decrease during the next 31 days after that anniversary.

At any time after the policy has either cash value or dividend values, you can surrender it for the sum of these values, less any outstanding policy loan and accrued policy loan interest. The amount payable to you upon surrender is the cash surrender value of the policy. We will pay the cash surrender value in one sum.

We can defer paying these proceeds for up to 6 months after the date of surrender. Interest will be paid on any amount deferred for 30 days or more. We set the interest rate each year. This rate will be not less than the rate required by law. All insurance will end when you send us your signed request for these surrender proceeds.

4.2 **Policy Loan Value** You can borrow any amount up to the loan value of this policy using this policy as sole security. On a policy anniversary, on a premium due date, or during the grace period, the policy loan value is the cash value, plus any dividend values, less any outstanding policy loan and accrued policy loan interest. At any other time, the policy loan value is the amount that, with interest, will equal the policy loan value on the next anniversary or on the next premium due date, if earlier. Extended insurance has no loan value.

We will require that you sign a loan agreement. We can defer a loan, except to pay a premium due us for as long as 6 months after we receive your loan request.

4.3 **Policy Loan Interest** Policy loan interest accrues each day. It is due on the policy anniversary, the date of death, surrender, a lapse, a policy loan increase or policy loan repayment or any other date we specify. Policy loan interest not paid when due will become part of the policy loan and will also bear interest.

4.4 **Policy Loan Interest Rate** The current policy loan interest rate for this policy may go up or down as described in this provision. However, the rate at any given time will apply to the entire amount of an outstanding policy loan. We determine the maximum policy loan interest rate and set the current policy loan interest rate quarterly, as of January 1, April 1, July 1, and October 1 of each calendar year.

The policy loan interest rate will not be more than the Published Monthly Average, as shown in Moody's Corporate Bond Yield Average – Monthly Average Corporates, as published by Moody's Investors Service, Inc., or any successor to that service , for the second calendar month prior to the date when we set an interest rate for this policy. If the maximum rate, at this time, as determined by the Published Monthly Average, is 0.5% or more above the current policy loan interest rate, we have the right to increase the policy loan interest rate to reflect this. However, if the rate, at this time, as determined by the Published Monthly Average, is 0.5% or more below the current policy loan interest rate, we will reduce the policy loan interest rate to reflect this. The policy loan interest rate will never be less than the interest rate shown on the Policy Data pages plus 1%. We refer to this rate as the minimum interest rate.

1152.IC-7

## SECTION FOUR – CASH VALUE AND POLICY LOANS (Continued)

We will tell you the interest rate in effect when a policy loan, including an Automatic Premium Loan (APL), is made and when we send you notice of policy loan interest due. If a loan is outstanding 40 days or more before the effective date of an increase in the interest rate, we will notify you of that increase at least 30 days prior to its effective date. We will notify you of any increase in the interest rate when a policy loan is made during the 40 days before the effective date of the increase.

If the Published Monthly Average ceases to be published, we will use a new basis approved by the insurance supervisory official of the state or district in which the policy is delivered.

4.5   **Automatic Premium Loan (APL)** If elected, APL provides an automatic policy loan that pays an overdue premium at the end of the grace period, subject to 2 conditions. First, the policy loan value must be enough to pay that premium. Second, if premiums have been paid by APL for 2 years in a row, the next premium will not be paid by APL. After a premium is paid other than by APL, before the end of the grace period, premiums can again be paid by APL.

APL can be elected in the application. You can also elect APL in your signed notice that we must receive before the end of the grace period. You can cancel this election for future premiums by telling us in your signed notice.

4.6   **Policy Loan Repayments** All or part of an outstanding policy loan and accrued policy loan interest can be repaid before the Insured's death or before you surrender the policy. We will deduct any outstanding policy loan and accrued policy loan interest when policy proceeds are paid.

If the policy is being continued as extended or paid-up insurance, any policy loan that we deducted in determining that insurance can be repaid only if the policy is reinstated. However, if that policy loan is not repaid, we will not deduct it again when life insurance proceeds are payable under extended or paid-up insurance.

4.7   **When Outstanding Policy Loan Exceeds Policy Loan Value** In a given policy year, based on the policy loan interest rate in effect when that year began (ignoring any higher interest rate during that year), the outstanding policy loan and accrued policy loan interest might exceed the sum of the cash value and any dividend values. In that event, we will mail a notice to you at your last known address, and a copy to the last known assignee on our records. All insurance will end 31 days after the date on which we mail that notice, if the excess of the outstanding policy loan and accrued policy loan interest over the sum of the cash value and any dividend values is not paid within that 31 days.

After a given policy year begins, a lower policy loan interest rate or rates might take effect during that year. In that event, when we determine if an outstanding policy loan and accrued policy loan interest will exceed the cash value and any dividend values, we will use the rate of interest in effect when that year began, and will also take into account the lower rate or rates.

1152.IC-8

# SECTION FIVE - DIVIDENDS

5.1    **Annual Dividend** While this policy is in force, except as extended insurance, it is eligible to share in our divisible surplus. Each year we determine the policy's share, if any. This share is payable as a dividend on the policy anniversary, if all premiums due before then have been paid.

It is unlikely that a dividend will be payable before the third anniversary.

5.2    **Dividend Options** Each dividend can be applied under one of the four options listed below. An option can be elected in the application. You can also elect or change the option for future dividends if you tell us in your signed notice.

    **1. Paid-up Addition** Applied to provide paid-up life insurance at the net single premium rate for the Insured's age at time of the dividend. No more premiums are due for this insurance. It has cash value and is eligible for dividends. Before the Insured's death, you can surrender paid-up additions for their cash value less any outstanding policy loan and accrued policy loan interest. The amount of this insurance in force at the Insured's death will be part of the life insurance proceeds.

    **2. Dividend Accumulation** Left with us to accumulate at interest. On each policy anniversary, we credit interest at the rate we set each year. This rate will be at least the rate required by law. Before the Insured's death, you can withdraw accumulations that have not been borrowed against, with interest to the date of withdrawal. Any accumulations that we still have at the Insured's death will be added to the life insurance proceeds.

    **3. Premium Payment** Applied toward payment of a premium, provided any balance of that premium is also paid when due. Any part of the dividend not needed to pay the premium will be used to pay any accrued policy loan interest due, unless you have asked to have that part of the dividend paid in cash. Any part of the dividend not needed to pay a premium or accrued policy loan interest will be paid in cash.

    **4. Cash** Paid in cash.

5.3    **Automatic Dividend Option** If no other option is in effect when a dividend becomes payable, we will apply it as a paid-up addition. If we pay a dividend in cash and the dividend check is not cashed within one year after that dividend became payable, we will apply the dividend as a paid-up addition instead.

5.4    **Dividend Values** Dividend values are any dividend accumulations on this policy and any paid up additions, plus the cash value of any paid-up additions.

5.5    **Fully Paid-up Policy** You can shorten the premium paying period for this policy by having it made fully paid-up with no more premiums due. This may be done on any premium due date, if the sum of the cash value and dividend values equals the total single premium for the policy and any riders, based on the Insured's age on that premium due date. We must receive your signed notice within 31 days of that premium due date.

5.6    **Dividend at Death** The part of any annual dividend earned from the last policy anniversary to the end of the policy month in which the Insured dies will be added to the life insurance proceeds.

1152.IC-9

# SECTION SIX – PAYMENT OF POLICY PROCEEDS

6.1 **Payment Of Policy Proceeds** The proceeds of this policy will be paid in one sum. Any life insurance proceeds paid in one sum will bear interest computed daily from the date of the Insured's death to the date of payment.

    (a) Interest will accrue at the rate set by the company for interest credited on death benefit proceeds. In determining the effective annual rate, we shall use the rate in effect on the date of death.

    (b) Interest will accrue at the effective annual rate determined in Item (a) above, plus additional interest at a rate of 10% annually beginning with the date that is 31 calendar days from the latest of items (i), (ii), and (iii) below to the date the claim is paid, where it is:

        (i)   The date that we received due proof of death;

        (ii)   The date that we receive sufficient information to determine our liability, the extent of that liability, the appropriate payee legally entitled to the proceeds; and

        (iii)   The date that legal impediments to payment of proceeds that depend on the action of parties other than us are resolved and sufficient evidence of the same is provided to us. Legal impediments to payment include, but are not limited to (a) the establishment of guardianships and conservatorships; (b) the appointment and qualification of trustees, executors and administrators, and (c) the submission of information required to satisfy state and federal reporting requirements.

# SECTION SEVEN - GENERAL PROVISIONS

7.1 **Entire Contract** The entire contract consists of this policy, any attached riders or endorsements, and the attached copy of the application.  Only our Chairman, President, Secretary, or one of our Vice Presidents is authorized to change the contract, and then, only in writing.  No change will be made to this contract without your consent.  No agent is authorized to change this contract.

7.2 **Information Provided In The Application** In issuing this policy, we have relied on the statements made in the application.  All such statements are deemed to be representations and not warranties.  We assume these statements are true and complete to the best of the knowledge and belief of those who made them.  No statement made in connection with the application will be used by us to void this policy or to deny a claim unless that statement is a material misrepresentation and is part of the application.

7.3 **Contestable Period** We will not contest this policy, after it has been in force during the lifetime of the Insured for 2 years from the Date of Issue, except for non-payment of premium.

If this policy ends, and is reinstated, we will not contest this policy based on statements made in the application for reinstatement after it has been in effect during the lifetime of the Insured for 2 years from the date of reinstatement.

We will not contest the payment of any life insurance proceeds attributable to the difference in rates due to a reclassification after it has been in effect during the lifetime of the Insured for 2 years from the effective date of the reclassification. We will require evidence of insurability in cases of reclassification.

1152.IC-10

# SECTION SEVEN - GENERAL PROVISIONS (Continued)

**7.4**  **Suicide Exclusion** Suicide of the Insured, while sane or insane, within 2 years of the Date of Issue, is not covered by this policy. In that event, this policy will end and the only amount payable will be the premiums paid to us, less any outstanding policy loan and accrued policy loan interest.

If this policy ends and is reinstated, suicide of the Insured, while sane or insane, within 2 years of the day of reinstatement is not covered.

**7.5**  **Policy Date** The Policy Date is the date from which premiums are calculated and become due. The Policy Date can be chosen to correspond to the definition of the Effective Date, as shown on the cover page of this policy. You can request another date if it is preferable to pay premiums on that date or have policy values accrue as of that date. If no specific Policy Date is chosen and no temporary coverage applies, the date the policy is issued will be the Policy Date. The Policy Date is also the date from which policy years, months and anniversaries are measured, unless otherwise stated.

Both the Policy Date and the Date of Issue are shown on the Policy Data pages.

**7.6**  **Calculation of Age** Unless stated otherwise, the Insured's age is the age on the birthday nearest the Policy Date, and is shown on the Policy Data page. The Insured's attained age is the age on the Policy Data page plus the number of policy years completed since the Policy Date.

**7.7**  **Misstatement of Age** If the age of an insured person is incorrectly stated in the application, the life insurance proceeds payable will be what the premiums paid would have purchased at the correct age.

**7.8**  **Policy Changes** If we agree, you can have riders added to this policy, or have it changed to another plan or to a smaller amount of insurance if it meets our minimum amount requirements.

**7.9**  **Assignment** While the Insured is living, you can assign this policy or any interest in it. If you do this, your interest, and anyone else's, is subject to that of the assignee. As owner, you still have the rights of ownership that have not been assigned.

An assignee cannot change the owner or beneficiary of this policy, and cannot elect or change an optional method of payment of proceeds. Any amount payable to the assignee will be paid in one sum.

You must provide us with a copy of the assignment. We are not responsible for the validity of any assignment. Any assignment will be subject to any payment we make or other action we take before we receive the assignment. Unless otherwise specified by the owner, assignments shall take effect on the date the notice of assignment is signed by the owner.

**7.10**  **Protection Against Creditors** Payments we make under this policy are, to the extent the law permits, exempt from the claims, attachments, or levies of any creditors.

**7.11**  **Payments to Company** Any payment made to us by check or money order must be payable to New York Life Insurance Company. When asked, we will provide a countersigned receipt, signed by our President or Secretary, for any premium paid to us.

**7.12**  **Conformity with Law** This policy is subject to all laws that apply. We reserve the right to make changes to this policy or to adjust policy values to ensure this policy at all times qualifies as life insurance for federal income tax purposes.

1152.IC-11

## SECTION SEVEN - GENERAL PROVISIONS (Continued)

7.13   **Voting Rights** Each year there is an election of persons to our Board of Directors. You have the right to vote in person or by mail if your policy is in effect, and has been in effect for at least one year after the Date of Issue. To find out more about this, write to the Secretary at our Home Office, 51 Madison Avenue, New York, New York 10010.

7.14   **Basis For Computation of Policy Values** All cash values, net single premium rates, and extended insurance rates referred to in this policy are based on the mortality tables shown on the "Additional Policy Information" Policy Data page. Continuous functions are used, with interest as stated on the Policy Data pages.

At any time, the guaranteed cash value of any extended or paid-up insurance or paid-up additional insurance is their respective net single premium.

We have filed a statement with the Interstate Insurance Product Regulation Commission. It describes, in detail, the method we used to compute these cash values. Each value is not less than the minimum value required by or pursuant to the NAIC Standard Nonforfeiture Law for Life Insurance, model #808.

7.15   **Age 121 Policy Anniversary** Beginning on the Policy Anniversary on which the Insured is age 121:
-   No further premium payments are permitted.
-   The cash value will continue to accumulate at interest.
-   Policy loan interest will continue to accrue at the current policy loan interest rate.
-   New policy loans can be requested.
-   The policy continues to be eligible for dividends, as described in the Dividends section.
-   The policy can be surrendered for its cash surrender value proceeds by submitting to us a signed written request that gives us the information we need.
-   Any other riders still attached to the policy will also end.

7.16   **Duty To Cooperate** You, the applicant, the insured and the beneficiary under this policy all have a duty to cooperate with us in the underwriting of this policy and in the investigation of any claim for benefits under the policy, including any attached riders. The duty to cooperate includes but is not limited to providing signed authorizations, in the form we request and without time limitation, for the release of information concerning all representations made in connection with the application, including medical condition and history and financial and employment information.

1152.IC-12

# ENDORSEMENT
## NYL-A-PLUS PREMIUM ARRANGEMENT

This policy is issued as part of a NYL-A-Plus premium paying arrangement which is referred to below as NYL-A-Plus.

Under NYL-A-Plus, premiums for more than one policy are paid in one sum each month. The NYL-A-Plus premium rate is in effect for your policy while it is in this arrangement.

If your policy is no longer in NYL-A-Plus, we will make a change so that premiums will be due (1)

every three months if each of those premiums would be at least $12.50; (2) every six months if each of those premiums would be at least $15.00 and method (1) is not available; or (3) once each year if methods (1) and (2) are not available.

We will make this change so that (a) it takes effect on the due date of the first premium which follows, by at least two months, the date NYL-A-Plus ends for this policy, and (b) a premium, if payable, will be due on the anniversary of this policy.

**NEW YORK LIFE INSURANCE COMPANY**

_Susan A. Thorpe_
Secretary

_Theodore A. Mathas_
President

5851-82

# ENDORSEMENT

This policy is issued in place of a previously
issued policy with the same policy number or in
place of part of a previously issued policy
with the same policy number.

**NEW YORK LIFE INSURANCE COMPANY**

*Susan A. Thigpe*
Secretary

*Theodore A. Mathas*
President

New York,   FEBRUARY 24, 2015

6526-92

# NEW YORK LIFE INSURANCE COMPANY

## RIDER

### DISABILITY WAIVER OF PREMIUM

1. **What Is Your Benefit?** This rider provides for the waiver of premiums for this policy in the event the Insured becomes totally disabled, as defined in this rider, while this rider is in effect.

2. **When Will Premiums Be Waived?** We will start to waive the premiums for this policy when proof is furnished that the Insured's total disability has gone on for at least 6 months in a row. Premiums must be paid when due, until we approve a claim under this rider.

   If a total disability starts on or prior to the anniversary on which the Insured is age 60, we will waive all of the premiums which fall due during that total disability. If it goes on until the anniversary on which the Insured is age 65, we will waive all further premiums payable for this policy.

   If a total disability starts after the anniversary on which the Insured is age 60, we will waive only those premiums which fall due during that total disability, and prior to the anniversary on which the Insured is age 65.

   Premiums are waived at the interval of payment in effect when the total disability started. While we waive premiums, all insurance goes on as if they had been paid. We will not deduct a waived premium from the policy proceeds. If a total disability starts during the grace period, the overdue premium must be paid before we will approve any claim.

3. **How Is "Total Disability" Defined?** "Total Disability" means that, during the first two years of disability, the Insured cannot do any of the essential acts and duties of his or her job because of disease or bodily injury. After the first two years of total disability, "Total Disability" means that the Insured, because of disease or bodily injury, cannot do any of the essential acts and duties of his or her job, or any other job for which he or she

is suited based on schooling, training, or experience. If the Insured can do some but not all of these acts and duties, disability is not total and premiums will not be waived.

If the Insured is a minor and is required by law to attend school, "Total Disability" means that because of disease or bodily injury, he or she is not able to attend school.

"Total Disability" also means the Insured's total loss, starting while this rider is in effect, of the sight of both eyes or the use of both hands, both feet, or one hand and one foot.

4. **What Are The Total Disabilities For Which Premiums Are Not Waived?** We will not waive premiums in connection with any of these total disabilities:

   (a) Those that start prior to the fifth birthday of the Insured, or start at a time when this rider is not in effect.

   (b) Those that are caused by an injury that is self-inflicted on purpose.

   (c) Those that are caused by any kind of war, declared or not, or by any act incident to a war or to an armed conflict involving the armed forces of one or more countries while the Insured is a member of those armed forces.

5. **How Is Proof of Total Disability Established?** Written notice and proof of this condition must be given to us, while the Insured is living and totally disabled, or as soon as it can reasonably be done.

6. **For How Long May Proof Be Required?** As long as we waive premiums, we may require proof from time to time of the Insured's total disability. After we have waived premiums for 2 years in a row, we will not need to have this proof more than once each year. As part of the proof, we may have the Insured examined, at our own expense, by a doctor we approve.

(over)

996-225

## DISABILITY WAIVER OF PREMIUM
### (continued)

7. **Will Premiums Be Refunded?** If a total disability starts after a premium has been paid, and if it goes on for at least 6 months in a row, we will refund the part of that premium paid for the period after the policy month when that disability started. Any other premium paid and then waived will be refunded in full.

8. **Does This Rider Have Cash Or Loan Values?** This rider does not have cash or loan values.

9. **Is This Rider Part Of The Contract?** This rider, when paid for, is made a part of the policy, based on the application for the rider.

10. **Will We Be Able To Contest This Rider?** We have no right to contest this rider after it has been in force during the lifetime of the Insured for 2 years from its date of issue, unless the Insured is totally disabled at some time within 2 years of the date of issue.

11. **What Is The Rider's Date Of Issue and Amount?** When this rider is issued at the same time as the policy, we show the rider premium amount on the Policy Data page of the policy. The rider and the policy have the same date of issue. When this rider is added to a policy which is already in force, we also put in an add-on rider. The add-on rider shows the date of issue and premium amount.

12. **When Does This Rider End?** You can cancel this rider as of the due date of a premium. To do this, you must send the policy and your signed notice to us within 31 days of that date. If this rider is still in effect on the anniversary on which the Insured is age 65, it will end on that date.

    This rider ends if the policy ends or is surrendered. Also, this rider will not be in effect if the policy lapses or is in force as extended or paid-up insurance.

**NEW YORK LIFE INSURANCE COMPANY**

Secretary

President

# RIDER

## SPOUSE'S PAID-UP INSURANCE PURCHASE OPTION (SPPO)

1.  **Benefit**  When this rider is in effect, and the Insured covered under the Base Policy dies, the eligible applicant shown in Section 2 below can purchase a new single premium paid-up whole life insurance policy (the "New Policy") on the Insured's Spouse. Evidence of insurability on the New Policy is not needed, subject to the terms and conditions of this rider. The Company must receive the application for the New Policy within 90 days after the Insured's death while the Insured's Spouse must be alive.

2.  **Eligibility**  One of the following eligible applicants can purchase the New Policy:

    a.) The Insured's Spouse, who is a Beneficiary for all or part of the Base Policy Life Insurance Proceeds (the "Life Proceeds"), as defined in Section 3 below.
    b.) The Owner, who is a Beneficiary for all or part of the Life Proceeds and is not the Insured's Spouse (the "Third Party").
    c.) The Owner, who is a Trust and a Beneficiary for all or part of the Life Proceeds. The Trust must be authorized by its terms to purchase insurance on the life of the Insured's Spouse. The Company has the right to obtain a copy of the Trust document.

3.  **Amount Of New Insurance**  The maximum face amount of the New Policy that can be purchased under this rider is the lesser of: (a) $5 million or (b) the Life Proceeds payable in one sum to which the eligible applicant is entitled as the Beneficiary, subject to the Company's minimum amount requirements. If the eligible applicant as Beneficiary receives only part of the Life Proceeds, then that amount is the maximum that can be purchased.

    The Life Proceeds is the amount, defined below, payable under the terms of the Base Policy. The Life Proceeds equals the sum of:

    a.) The proceeds from the Base Policy, prior to deducting any unpaid loan; and
    b.) Any riders on the same Insured, as defined in the Base Policy, attached to this policy excluding accidental death benefits; and
    c.) Any dividends, if applicable.

4.  **Premium For New Policy**  The single premium amount for the New Policy is based on the Insured Spouse's gender and age on the Effective Date of the New Policy, as defined in Section 8. As payment for the New Policy, we will reduce the Life Proceeds payable to the eligible applicant shown in Section 2 above by the single premium. If these proceeds are not sufficient to pay the entire single premium, the balance of that premium must be paid to us before the New Policy will take effect. A Table of Single Premium amounts for the New Policy is shown on this rider's data page. (These amounts are shown on a per $1,000 basis.)

5.  **Availability Of Riders**  Riders are not available on the New Policy.

6.  **Values**  The New Policy has cash value and loan value. It is eligible for dividends, but it is not expected that any dividends will be payable.

7.  **Application For New Policy**  The application to purchase the New Policy can be submitted before we have paid the Life Proceeds to the eligible applicant.

    The Company must receive the application signed by the Insured's Spouse and all other required signatures while the Insured's Spouse is living and within 90 days after the Insured's death.

**(over)**

205-375.10

## SPOUSE'S PAID-UP INSURANCE PURCHASE OPTION (SPPO)
### (Continued)

8.   **Issuance Of New Policy**  The New Policy will be a single premium paid-up whole life insurance policy issued by New York Life Insurance Company.  The New Policy is made available only under the terms of this rider.

The Insured's Spouse must be alive on the Effective Date of the New Policy.  The Effective Date of the New Policy will be the later of:

a.)   The date we receive the application which is signed by the Insured's Spouse and eligible applicant if different, while that Insured's Spouse is alive and within 90 days after the Insured's death;

b.)   The date we determine the Life Proceeds payable to the Insured's Spouse or Owner-Beneficiary; or

c.)   The date we receive the entire single premium for the New Policy.

Unless otherwise stated in the application: a.) The Insured's Spouse will be the Owner of the New Policy; and b.)The Beneficiary for the New Policy will be the estate of the Insured's Spouse.  Proceeds from the New Policy will be payable in accordance with the terms and conditions of the New Policy.

9.   **Simultaneous Death**  If the Insured's Spouse, who has the right to purchase a New Policy, dies at the same time as the Insured or within 30 days after the Insured's death, the Insured's Spouse is still eligible for the benefit provided by this rider.  If this occurs and we are notified, in writing at our Service Center or any other location that we indicate to you in writing, of the Spouse's death within 90 days after the death of the Insured, the Company will pay the Spouse's estate the lesser of: (a) $2.5 million or (b) the maximum amount of single premium paid-up whole life insurance that the Insured's Spouse could have purchased under this rider less the applicable single premium for that insurance.

The simultaneous death provision does not apply to a policy in which a Third Party or Trust is the Owner and Beneficiary for any or all of the Life Proceeds.  If either the Insured or the Insured's Spouse under the Base Policy commits suicide, while sane or insane, this provision does not apply.

10.   **Contract**  This rider is made a part of the Base Policy.  If added to a Base Policy that is already in-force, this rider is made a part of that Base Policy, based on the application for the rider.

11.   **Suicide Exclusion**  Suicide of the Insured's Spouse, while sane or insane, within one year after the date of the Insured's death, is not covered by this rider.

12.   **Contestability Of Rider**  We will not contest this rider if it is issued with the Base Policy.

If this rider is added to a policy that is already in force, we will not contest the rider after it has been in effect during the lifetime of the Insured for 2 years from the date of issue of the rider.

13.   **Dates**  This rider and the Base Policy have the same date of issue and Effective Date, unless the rider is added to a policy that is already in force.  In this case, the date of issue and Effective Date of this rider is shown in an add-on rider that we put in the Base Policy.

14.   **Effect of Base Policy's Conditional Temporary Coverage Agreement**  This rider is not applicable if the claim for the Life Proceeds is made under the Base Policy's Conditional Temporary Coverage Agreement.

## SPOUSE'S PAID-UP INSURANCE PURCHASE OPTION (SPPO)
### (Continued)

15. **When Rider Ends** You can cancel this rider with a signed request at any time. This rider ends if the Base Policy ends, is surrendered, or is exchanged for a new policy.

16. **Definitions** Unless stated otherwise, terms in this rider have the same meaning as in the Base Policy to which it is attached. References to the Base Policy refer to the policy to which this rider is attached.

NEW YORK LIFE INSURANCE COMPANY

Secretary

President

05375.10-3

## SINGLE PREMIUM FOR SPOUSE'S PAID-UP LIFE INSURANCE POLICY
### (per $1,000 based on the gender and attained age of the surviving spouse)

| Issue Age | Male | Female | Unisex | Issue Age | Male | Female | Unisex |
|---|---|---|---|---|---|---|---|
| 14 | 150.22 | 124.05 | 139.86 | 58 | 582.53 | 503.39 | 550.30 |
| 15 | 155.06 | 128.18 | 144.42 | 59 | 598.02 | 517.98 | 565.33 |
| 16 | 159.91 | 132.42 | 149.03 | 60 | 613.68 | 532.98 | 580.60 |
| 17 | 164.79 | 136.79 | 153.70 | 61 | 629.49 | 548.39 | 596.12 |
| 18 | 169.71 | 141.28 | 158.44 | 62 | 645.42 | 564.16 | 611.84 |
| 19 | 174.72 | 145.92 | 163.30 | 63 | 661.43 | 580.23 | 627.70 |
| 20 | 179.86 | 150.72 | 168.30 | 64 | 677.45 | 596.51 | 643.66 |
| 21 | 185.18 | 155.68 | 173.48 | 65 | 693.46 | 612.95 | 659.65 |
| 22 | 190.71 | 160.82 | 178.84 | 66 | 709.41 | 629.54 | 675.65 |
| 23 | 196.49 | 166.16 | 184.44 | 67 | 725.33 | 646.30 | 691.69 |
| 24 | 202.55 | 171.69 | 190.28 | 68 | 741.20 | 663.27 | 707.78 |
| 25 | 208.89 | 177.43 | 196.38 | 69 | 757.05 | 680.53 | 723.95 |
| 26 | 215.56 | 183.38 | 202.75 | 70 | 772.86 | 698.08 | 740.22 |
| 27 | 222.53 | 189.54 | 209.40 | 71 | 788.60 | 715.90 | 756.55 |
| 28 | 229.82 | 195.93 | 216.33 | 72 | 804.18 | 733.90 | 772.85 |
| 29 | 237.43 | 202.55 | 223.53 | 73 | 819.51 | 751.95 | 789.03 |
| 30 | 245.34 | 209.40 | 231.02 | 74 | 834.48 | 769.90 | 804.97 |
| 31 | 253.56 | 216.48 | 238.79 | 75 | 849.01 | 787.62 | 820.57 |
| 32 | 262.08 | 223.81 | 246.83 | 76 | 863.09 | 805.06 | 835.81 |
| 33 | 270.92 | 231.40 | 255.17 | 77 | 876.73 | 822.20 | 850.69 |
| 34 | 280.05 | 239.26 | 263.78 | 78 | 889.99 | 839.05 | 865.27 |
| 35 | 289.48 | 247.36 | 272.69 | 79 | 902.94 | 855.66 | 879.61 |
| 36 | 299.22 | 255.75 | 281.88 | 80 | 915.64 | 872.03 | 893.75 |
| 37 | 309.25 | 264.38 | 291.35 | 81 | 928.07 | 888.13 | 907.67 |
| 38 | 319.58 | 273.25 | 301.09 | 82 | 940.19 | 903.85 | 921.29 |
| 39 | 330.18 | 282.36 | 311.10 | 83 | 951.89 | 919.10 | 934.52 |
| 40 | 341.07 | 291.70 | 321.37 | 84 | 963.06 | 933.74 | 947.23 |
| 41 | 352.24 | 301.26 | 331.88 | 85 | 973.65 | 947.72 | 959.38 |
| 42 | 363.66 | 311.04 | 342.64 | 86 | 983.65 | 961.04 | 970.97 |
| 43 | 375.37 | 321.04 | 353.65 | 87 | 993.16 | 973.74 | 982.06 |
| 44 | 387.35 | 331.28 | 364.92 | 88 | 1,000.00 | 985.89 | 992.73 |
| 45 | 399.60 | 341.77 | 376.46 | 89 | 1,000.00 | 997.61 | 1,000.00 |
| 46 | 412.12 | 352.52 | 388.26 | 90 | 1,000.00 | 1,000.00 | 1,000.00 |
| 47 | 424.93 | 363.54 | 400.34 | 91 | 1,000.00 | 1,000.00 | 1,000.00 |
| 48 | 438.02 | 374.85 | 412.70 | 92 | 1,000.00 | 1,000.00 | 1,000.00 |
| 49 | 451.40 | 386.44 | 425.34 | 93 | 1,000.00 | 1,000.00 | 1,000.00 |
| 50 | 465.06 | 398.32 | 438.26 | 94 | 1,000.00 | 1,000.00 | 1,000.00 |
| 51 | 479.00 | 410.47 | 451.45 | 95 | 1,000.00 | 1,000.00 | 1,000.00 |
| 52 | 493.20 | 422.90 | 464.91 | 96 | 1,000.00 | 1,000.00 | 1,000.00 |
| 53 | 507.64 | 435.62 | 478.61 | 97 | 1,000.00 | 1,000.00 | 1,000.00 |
| 54 | 522.28 | 448.59 | 492.53 | 98 | 1,000.00 | 1,000.00 | 1,000.00 |
| 55 | 537.09 | 461.83 | 506.66 | 99 | 1,000.00 | 1,000.00 | 1,000.00 |
| 56 | 552.07 | 475.36 | 520.99 | 100 | 1,000.00 | 1,000.00 | 1,000.00 |
| 57 | 567.22 | 489.20 | 535.53 | | | | |

# RIDER

## OPTION TO PURCHASE PAID-UP ADDITIONS (OPP)

### <u>Please read this rider carefully.</u>

1. **Benefit** This rider provides you with the right to purchase new paid-up life insurance on the Insured. This is referred to as "Paid-Up Insurance" in this rider. Any Paid-Up Insurance purchased is additional insurance. No more premiums are due for this insurance. The amount of this insurance in force at the Insured's death will be included in the life insurance proceeds of the policy to which this rider is attached. This policy is referred to as "Base Policy" in this rider.

   However, if the Base Policy lapses or is surrendered, we will pay the values of any Paid-Up Insurance under the Options Upon Lapse provision in the Base Policy.

2. **Payments** Unless we agree, the total of all payments under this rider in any policy year cannot be more than 100% of the annual premium amount for the base plan of insurance, based on a standard class of risk. This amount excludes premiums for any riders and the policy fee on the Base Policy. It is referred to in this rider as the OPP Payment Limit and is shown on the Base Policy's data pages. To make a payment that exceeds the OPP Payment Limit, satisfactory evidence of insurability will be required. The application used for this excess purchase will be made a part of the Base Policy. The excess purchase will be subject to the Incontestability and Suicide Exclusion provisions of this rider beginning as of the date the excess insurance is purchased.

   In addition, unless we agree otherwise, each unscheduled payment or the total of all scheduled payments in a policy year must be at least the minimum amounts shown on the Rider Data pages. No Paid-Up Insurance can be purchased under this rider after it ends, or while it is not in effect.

   A. **Scheduled Payments** A scheduled payment arrangement may be established provided the Insured is alive. You may purchase Paid-Up Insurance under that arrangement. Your scheduled payment arrangement will establish the due date for payment. We must receive payments made under this scheduled payment arrangement no later than 31 days after its due date. The Insured must be living when we receive this payment. When we receive a scheduled payment, the Paid-Up Insurance will take effect as of its due date.

      If a scheduled payment is not received within 31 days of its due date, the scheduled payment arrangement in effect at that time will end. However, this rider will remain in force, and unscheduled payments can still be made. A new scheduled payment arrangement can be established at any time. However, we will require evidence of insurability for the new arrangement, if the amount exceeds the limitations described above in this section.

      It may happen that you make a scheduled payment that is less than the scheduled amount. If this occurs, the amount remitted will become the scheduled payment amount. You may re-establish the original scheduled payment amount. However, we will require evidence of insurability for the new arrangement, if the amount exceeds the limitations described above in this section.

      The scheduled payments referred to in this provision may be waived under the terms of any disability waiver of premium rider attached to the Base Policy. For further details, please see the Waiver of Premium Benefits section of this rider.

## OPTION TO PURCHASE PAID-UP ADDITIONS (OPP)
### (continued)

B. **Unscheduled Payments** Unscheduled payments may be made from time to time under this rider. Any unscheduled payments must be received while the Insured is living.  These unscheduled payments must comply with the limitations described in the beginning of this section.  Upon receipt of an unscheduled payment, the new Paid-Up Insurance will take effect as of the date we receive the payment.  Unscheduled payments will not be waived under the terms of any disability waiver of premium attached to the Base Policy.

However, if no Paid-Up Insurance is purchased by the second anniversary or for 3 anniversaries in a row, this rider ends.  You must provide satisfactory evidence of insurability to reinstate this rider.  See Sections 5 and 11 for more information.

3. **Purchase Of Paid-Up Insurance** The amount of the payments made each year to purchase new Paid-Up Insurance is in addition to the premium payable for the Base Policy.  The amount purchased by each payment is based on the net single premium rate for the Insured's age as of the most recent policy anniversary.  Prior to the purchase of any Paid-Up Insurance, all payments made under this rider are subject to an expense charge shown on the Policy Data pages of the Base Policy.

The amount purchased by any payments made more than 31 days after a policy anniversary is reduced based upon the amount of time since the anniversary and upon an interest rate(s) that is set at the beginning of each calendar year.  This reduction is in addition to the expense charge.  It increases the later a payment is made during a policy year.

The interest rate used to calculate the reduction referred to above will be equal to the Monthly Average Corporates yield shown in Moody's Corporate Bond Yield Average – Monthly Average Corporates as published by Moody's Investors Service, Inc. or any successor to that service (the published monthly average), for the month of October of the prior calendar year.  It may happen that the published monthly average ceases to be published.  In this case, we will use a new basis approved by the insurance supervisory official in the state or district in which the Base Policy is delivered.

4. **Waiver Of Premium Benefit**  We will waive scheduled payments under this rider if:

   1.  A disability waiver of premium rider is attached to the Base Policy;
   2.  The premiums for the Base Policy are being waived under the terms of that disability waiver of premium rider; and
   3.  A scheduled payment arrangement was in effect on the date the disability began.

Any reference to premiums in any disability waiver of premium rider includes scheduled payments under this rider. Unscheduled payments will not be waived.

We will waive all scheduled payments under this rider beginning on the date the disability began. Scheduled payments will be waived as of each payment's due date.  The amount that is waived is equal to the last scheduled payment received by us prior to the date disability began.  When a scheduled payment is waived, we will credit a scheduled payment to the policy.  This will have the same effect as if you had actually made the scheduled payment.  That payment will be subject to the appropriate expense charges and reductions described in this rider.  It will purchase new Paid-Up Insurance in accordance with the Purchase of Paid-Up Insurance section of this rider.  Once we begin waiving payments, no payments will be accepted to purchase any new Paid-Up Insurance while the disability continues.

PAGE 2

207-331.10

## OPTION TO PURCHASE PAID-UP ADDITIONS (OPP)
### (continued)

Scheduled payments received by us during the period between the date disability began and the date we actually begin waiving premiums under the policy will be refunded. However, the Paid-Up Insurance purchased by those scheduled payments will remain in force. Any payment more than the scheduled payment amount will be considered an unscheduled payment. This unscheduled payment will not be refunded.

We will also refund any payments that are less than the scheduled payment amount. In this case, we will credit a scheduled payment to the policy to purchase Paid-Up Insurance. It will be in the amount established in the scheduled payment arrangement in effect just prior to the date of total disability. Unscheduled payments will not be refunded.

There is a charge for this benefit if a disability waiver of premium rider is attached to the Base policy. We will deduct this charge from all scheduled payments made under this rider. This charge is shown on the Policy Data page. This charge is described in the Purchase Of Paid-Up Insurance section of this rider. It will be deducted prior to the expense charge and any other reduction. Each charge associated with this rider will continue to be deducted from all scheduled payments we credit during total disability.

5.  **Reinstatement Of Rider** This rider will be reinstated when the Base Policy is reinstated but we must receive evidence of insurability that is acceptable to us and the Insured must be alive.

    Additionally, the rider can be reinstated if no Paid-Up Insurance was purchased by the second anniversary or for 3 anniversaries in a row.

    If this rider is reinstated, new Paid-Up Insurance can be purchased only as of a date that is on or after the date of the reinstatement. New 2 year Incontestability and Suicide Exclusion periods will apply beginning on the date of reinstatement.

6.  **Contract** This rider is made a part of the Base Policy, based on the application for the rider.

7.  **Contestable Period Of Rider** We will not contest this rider, or any Paid-Up Insurance that does not exceed the OPP Payment Limit, after the rider has been in force during the lifetime of the Insured for 2 years from its date of issue. Our right to contest is limited to material misstatements made in the original application, the application for an excess purchase, or the Reinstatement application, as appropriate.

8.  **Suicide Exclusion** Suicide of the Insured, while sane or insane, within 1 year of the date of issue of this rider, is not covered by this rider. In that event, this rider will end and the only amount payable will be all payments made under this rider, less any outstanding loan and accrued loan interest.

9.  **Values** The Paid-Up Insurance has cash value and loan value. It is eligible for dividends. Cash values and net single premiums are based on the mortality table shown on the OPP rider data page. Continuous functions are used. Interest is compounded at 4%. During the policy year in which a payment is made under this rider, the cash value of Paid-Up Insurance purchased by that payment will be limited to the amount of that payment less adjustments.

10. **Dates and Amounts** This rider and Base Policy have the same date of issue, unless the rider is added to a policy that is already in force. If this rider is issued at the same time as the Base Policy, the date of issue is shown on the Base Policy Data pages. If this rider is added to a policy that is already in force, the rider date of issue is shown on an add-on rider that we send you.

207-331.10

## OPTION TO PURCHASE PAID-UP ADDITIONS (OPP)
### (continued)

**11. When Rider Ends** This rider ends when:

    a) The Base Policy ends or is surrendered;

    b) You send us your signed notice to cancel this rider. You can do this at any time;

    c) No premium for Paid-Up Insurance is paid by the second anniversary or for 3 anniversaries in a row, unless premiums for the policy are being waived on account of total disability; or

    d) The Base Policy is in force as paid-up insurance or extended term insurance resulting from non-payment of policy premiums.

Any Paid-Up Insurance in force when this rider ends will continue, if the Base Policy continues. No new Paid-Up Insurance can be purchased unless this rider is reinstated.

**NEW YORK LIFE INSURANCE COMPANY**

_Susan A. Thorpe_
Secretary

_Theodore A. Mathas_
President

Page 4

207-331.10

POLICY NUMBER: 39 920 541                         INSURED: RICARDO MONTALVO JR

## OPTION TO PURCHASE PAID-UP ADDITIONS (OPP)
### (continued)

**ADDITIONAL INFORMATION FOR THIS RIDER:**
-THE MINIMUM UNSCHEDULED PAYMENT REFERRED TO IN SECTION 2 IS $50.
-THE TOTAL OF ALL SCHEDULED PAYMENTS IN A POLICY YEAR REFERRED TO IN SECTION 2
IS $60.

- THE MORTALITY TABLE REFERRED TO IN SECTION 9 OF THIS RIDER IS:
THE 2001 CSO UNISEX (80) COMPOSITE ULTIMATE TABLE OF MORTALITY, ANB.

Table of Cash Values for Option To Purchase Paid-Up Additions Rider
(per $1,000 of Paid-Up Insurance in force at attained age indicated)

| ATTAINED AGE | Cash Value | ATTAINED AGE | Cash Value | ATTAINED AGE | Cash Value | ATTAINED AGE | Cash Value | ATTAINED AGE | Cash Value |
|---|---|---|---|---|---|---|---|---|---|
| 1 | 63.31 | 26 | 151.14 | 51 | 353.13 | 76 | 689.45 | 101 | 918.55 |
| 2 | 65.34 | 27 | 156.32 | 52 | 364.68 | 77 | 703.54 | 102 | 923.37 |
| 3 | 67.61 | 28 | 161.66 | 53 | 376.48 | 78 | 717.47 | 103 | 928.18 |
| 4 | 70.07 | 29 | 167.22 | 54 | 388.52 | 79 | 731.15 | 104 | 932.91 |
| 5 | 72.68 | 30 | 173.02 | 55 | 400.76 | 80 | 744.49 | 105 | 937.49 |
| 6 | 75.39 | 31 | 179.06 | 56 | 413.18 | 81 | 757.49 | 106 | 941.80 |
| 7 | 78.21 | 32 | 185.35 | 57 | 425.77 | 82 | 770.00 | 107 | 945.84 |
| 8 | 81.13 | 33 | 191.88 | 58 | 438.53 | 83 | 782.07 | 108 | 949.61 |
| 9 | 84.17 | 34 | 198.67 | 59 | 451.54 | 84 | 793.74 | 109 | 953.16 |
| 10 | 87.32 | 35 | 205.71 | 60 | 464.79 | 85 | 804.95 | 110 | 956.43 |
| 11 | 90.60 | 36 | 213.00 | 61 | 478.24 | 86 | 815.65 | 111 | 959.39 |
| 12 | 93.99 | 37 | 220.54 | 62 | 491.84 | 87 | 825.84 | 112 | 962.09 |
| 13 | 97.45 | 38 | 228.34 | 63 | 505.51 | 88 | 835.34 | 113 | 964.61 |
| 14 | 101.01 | 39 | 236.38 | 64 | 519.23 | 89 | 844.14 | 114 | 967.36 |
| 15 | 104.65 | 40 | 244.69 | 65 | 533.00 | 90 | 852.24 | 115 | 969.81 |
| 16 | 108.32 | 41 | 253.27 | 66 | 546.83 | 91 | 859.74 | 116 | 972.14 |
| 17 | 112.05 | 42 | 262.10 | 67 | 560.76 | 92 | 867.22 | 117 | 974.41 |
| 18 | 115.82 | 43 | 271.19 | 68 | 574.82 | 93 | 874.57 | 118 | 976.41 |
| 19 | 119.70 | 44 | 280.53 | 69 | 589.00 | 94 | 881.65 | 119 | 978.31 |
| 20 | 123.70 | 45 | 290.10 | 70 | 603.35 | 95 | 888.27 | 120 | 980.64 |
| 21 | 127.86 | 46 | 299.91 | 71 | 617.79 | 96 | 894.13 | 121 | 1000.00 |
| 22 | 132.17 | 47 | 309.97 | 72 | 632.31 | 97 | 899.39 | | |
| 23 | 136.64 | 48 | 320.28 | 73 | 646.71 | 98 | 903.85 | | |
| 24 | 141.30 | 49 | 330.91 | 74 | 661.02 | 99 | 908.75 | | |
| 25 | 146.13 | 50 | 341.87 | 75 | 675.28 | 100 | 913.77 | | |

**ENDORSEMENT**

**New York Life Insurance Company**

51 Madison Avenue
New York, N.Y.  10010

A Mutual Company Founded in 1845

**Employee's Whole Life Insurance Policy.**

Life Insurance Proceeds Payable At
Insured's Death.  Premium Payments
Payable During Insured's Lifetime, Until Date
Shown On The Policy Data Pages.
No Premium Payments Payable On Or After Age 121.

This Policy is Eligible for Dividends.

THIS POLICY WAS APPROVED UNDER THE AUTHORITY OF THE INTERSTATE INSURANCE PRODUCT REGULATION COMMISSION AND ISSUED UNDER THE COMMISSION STANDARDS. ANY PROVISION OF THIS POLICY THAT ON THE PROVISION'S EFFECTIVE DATE IS IN CONFLICT WITH INTERSTATE INSURANCE PRODUCT REGULATION COMMISSION STANDARDS FOR THIS PRODUCT TYPE IS HEREBY AMENDED TO CONFORM TO THE INTERSTATE INSURANCE PRODUCT REGULATION COMMISSION STANDARDS FOR THIS PRODUCT TYPE AS OF THE PROVISION'S EFFECTIVE DATE.

ICC11211-52